[Nos. 31738-9-II; 31741-9-II.   Division Two.   January 8, 2008.]

JOSEPH KWIATKOWSKI, *Appellant*, v. RALPH DREWS ET AL., *Respondents.*

*In the Matter of the Guardianship of* JOSEPH KWIATKOWSKI.

466

468

*Robin H. Balsam* (of *Balsam McNallen, LLP*), for appellant.

*Lisa A. Liekhus* (of *Law Offices of Steven L. Abel*); *Mary C. Eklund* (of *Eklund Rockey Stratton, PS*); *Catherine Wright*

*Smith* (of *Edwards Sieh Smith & Goodfriend, PS*); *Michael E. Kipling* (of *Kipling Law Group, PLLC*); *Matthew Turetsky, Averil B. Rothrock,* and *Christopher H. Howard* (of *Schwabe Williamson & Wyatt, PC*); and *Greg Montgomery* (of *Miller Nash, LLP*), for respondents.

¶1 BRIDGEWATER, J. — Joseph Kwiatkowski appeals: (1) the trial court's order granting the three defendant banks' motion to enforce a settlement agreement; (2) the trial court's summary judgment dismissal of his damages claims against the three banks that served as successive guardians/limited guardians of his estate during his 15-year period of incapacity and against the two "special administrators" of his business interests, one who also acted as a limited guardian of his estate; (3) the trial court's denial of his motions to set aside the guardianship court's orders related to the discharge of the various guardians/limited guardians of the estate and for accountings; and (4) the trial court's denial of his motion to amend his complaint and add parties brought after the trial court granted summary judgment to all defendants. He also challenges various attorney fees and cost awards on numerous grounds. We affirm.

## FACTS

¶2 Kwiatkowski appeals several trial court orders and summary judgment dismissals in his damages action against several parties who, at various times, served as guardians or limited guardians of his estate and/or "special administrators" of his business during a term of incapacity

from 1986 to 2001. He also appeals the denial of his motions to set aside various orders entered in the underlying guardianship case. Because of our disposition, it is unnecessary to set out all the facts, other than the procedural facts that we address below.

¶3 In 1986, while vacationing in New Zealand, Kwiatkowski suffered a head injury in a car accident; later, he was determined to be incapacitated. His wife, Jana Kwiatkowski, died in the accident. That same year, the guardianship court appointed Bank of America (BOA), formerly Seattle First National Bank, as "guardian" of Kwiatkowski's estate. At the same time, the guardianship court appointed a guardian ad litem (GAL) for Kwiatkowski.

¶4 In 1990, the guardianship court appointed Ralph Drews and James Frost as "special administrators" of Kwiatkowski's company, the Great American Herb Company (GAHC), while ensuring that BOA did not have any ability to manage the company.[1] Specifically, the guardianship court ordered that BOA was a limited guardian and that it was "exonerated from any and all liability in connection with the operations of the company." Clerk's Papers (CP) at 22. Kwiatkowski's GAL approved this order.

¶5 In 1991, Kwiatkowski's GAL petitioned for a change of guardianship in the estate. The guardianship court: granted this petition; discharged BOA; and later appointed Puget Sound National Bank, which later became Key Trust Company (Key Bank), as limited guardian. The guardianship court eventually discharged Key Bank and then appointed U.S. Bank as limited guardian.

¶6 In 1997, the guardianship court discharged U.S. Bank and appointed Drews as limited guardian of Kwiatkowski's estate. After finding that Kwiatkowski was capable of managing his company, the guardianship court

---

[1] In 1986, before the Kwiatkowskis left for their trip to New Zealand, they made Drews and Frost attorneys-in-fact with durable power of attorney over GAHC's business accounts.

discharged Drews and Frost as "special administrators" of GAHC and discharged Kwiatkowski's GAL. Nevertheless, Drews remained as limited guardian of Kwiatkowski's estate, to oversee Kwiatkowski in his business relationships. In 2001, the guardianship court terminated this limited guardianship because Kwiatkowski had regained full capacity. And in 2002, Drews filed his final report as limited guardian of the estate.

¶7 In 2004, Kwiatkowski filed a claim for damages against Drews, Frost, and the Banks,[2] alleging three categories of claims: (1) breach of fiduciary duty, against all defendants; (2) negligence, against all defendants; and (3) conflict of interest, against only Drews and Frost. Each claim included several allegations regarding the defendants' actions pertaining to Jana Kwiatkowski's estate and Kwiatkowski's guardianship, as well as regarding the defendants' various capacities pertaining to GAHC. Among other things, Kwiatkowski alleged that he had suffered "financial and personal damages," including the loss of his company, and he claimed that the defendants were jointly and severally liable. CP at 221.

¶8 In April 2004, the trial court granted summary judgment for Drews and Frost, dismissing the claims against them. The trial court then denied Kwiatkowski's subsequent motion to set aside the 1997 order discharging the "special administrators," noting that it had already granted summary judgment to Drews and Frost in this action. Kwiatkowski subsequently filed in this court a timely motion for discretionary review/notice of appeal of: (1) the order granting summary judgment for Drews and Frost and (2) the order denying the motion to set aside the prior order and for an accounting. We stayed the matter pending resolution of other issues in the case.

¶9 In June 2004, the trial court granted the Banks' motions for summary judgment, dismissing all the claims

---

[2] We use the term, "the Banks," to collectively refer to BOA, Key Bank, and U.S. Bank.

against the Banks with prejudice. In relation to the Banks, the trial court again denied Kwiatkowski's motion to set aside the prior orders and for an accounting.[3] Although the trial court initially denied the Banks' requests for attorney fees and costs, on reconsideration it granted attorney fees and costs to the Banks.

¶10 In January 2005, Kwiatkowski entered into a settlement agreement with the Banks, wherein he agreed to waive his right to appeal the summary judgment dismissals in favor of the Banks and the Banks agreed to waive their rights to seek attorney fees and costs.[4] After Kwiatkowski signed the settlement agreement, but before he filed the stipulated order of dismissal, one of his attorneys discovered what she believed was "new" information pertaining to the Banks' performance of their duties; and she asked the Banks to "hold further work" on the settlement agreement. CP at 937, 964-65, 978-79, 3000. The Banks responded by filing a motion to enforce the settlement agreement.

¶11 Following several hearings in which Kwiatkowski challenged the validity and enforceability of the settlement agreement on a variety of grounds, and several additional rounds of discovery, the trial court granted the Banks' motion to enforce the settlement agreement, filing its order in March 2006. Additionally, in May 2006, the trial court granted attorney fees and costs to BOA and Key Bank, in the amount of $65,823.98 and $32,198.08, respectively.

¶12 Meanwhile, in May 2006, Kwiatkowski filed a motion to amend his complaint and to add the following

---

[3] Notably, at a June 2004 hearing, Kwiatkowski's counsel conceded that Kwiatkowski's assertion that the Banks had failed to meet the conditions of discharge, because they did not file the proper receipts, was moot because the record showed that the Banks filed the proper receipts.

[4] Kwiatkowski was initially represented by Paul Doumit during the negotiations with the Banks, but Doumit died in August 2004. At that point, Donna Holt stepped in to help Kwiatkowski obtain records related to the settlement agreement and to help him obtain new counsel. Michael Schein took over the case in December 2004.

parties: (1) Arthur Davies,[5] (2) the attorney for the estate, (3) some of the guardians, (4) Drews and Frost as special administrators, and (5) Davies's law firm. The trial court denied this motion in June 2006.

¶13 Kwiatkowski appealed. Thereafter, we lifted the stay on his prior notice of discretionary review/notice of appeal and consolidated the two appeals.

## ANALYSIS

### I. Issues Related to the Banks

#### A. Order Enforcing Settlement Agreement and Summary Judgment Orders

##### 1. Related Facts

¶14 The negotiated settlement agreement with the Banks included paragraph five, which provides:

> 5. Each party acknowledges that it has had the opportunity to conduct an investigation into the facts and evidence relating to the Released Claims and that it has made an independent decision to enter this AGREEMENT, without relying on representations of any other party. Each party assumes the risk that the facts or evidence may turn out to be different than it now understands them to be and agrees to be bound by this AGREEMENT notwithstanding the discovery of new or different facts or evidence.

CP at 942. According to this provision, the parties: (1) had the opportunity to conduct an investigation; (2) had made an independent decision to enter into the settlement agreement *without* relying on representations from any other party; (3) each assumed the risk that the facts and/or evidence could differ from what they understood at the time they entered into the settlement agreement; and (4) were

---

[5] Davies represented the Kwiatkowskis in various matters. At various times, Davies was a member of GAHC's board of directors.

bound by the settlement agreement, "notwithstanding the discovery of new or different facts or evidence." CP at 942.

¶15 After Kwiatkowski signed the settlement agreement, his attorney forwarded it to the Banks for their signatures. But before Kwiatkowski filed the stipulated order of dismissal, Robin Balsam, another attorney representing Kwiatkowski in a different matter, discovered documents that she considered to be "new" evidence relevant to the damages claims. She also believed that the Banks had not disclosed this information to the guardianship court or to Kwiatkowski during the settlement agreement negotiations.

¶16 On April 12, 2005, apparently unaware that Kwiatkowski had already signed the settlement agreement, Balsam contacted Michael Schein, the attorney representing Kwiatkowski in this matter, and asked him to talk to her before proceeding with the settlement agreement negotiations. On April 13, 2005, the last of the Banks apparently signed the settlement agreement. Meanwhile, Balsam obtained copies of the recently discovered documents[6] on April 21, 2005, and sent them to Schein the same day. Kwiatkowski's attorneys later asserted that the only documents they examined during the settlement agreement negotiations were the documents in the guardianship court's files.

¶17 On May 2, 2005, the Banks' attorneys signed the stipulation and order required under the settlement agreement and forwarded it to Schein for his signature. Kwiatkowski did not file the stipulated order. Instead, on May 4, 2005, Balsam informed the Banks that she now represented Kwiatkowski in this matter and requested that the Banks "hold further work" on the settlement agreement to allow

---

[6] In her declaration, Balsam asserts that these documents included "Minutes of Special Meeting of Shareholder of Sirius Enterprises, Inc.," regarding a December 21, 1986 meeting, and a copy of the certificate of incorporation for "Sirius Development Corporation," dated January 10, 1994. CP at 972, 975-77.

her time to investigate the "newly discovered" information.[7] CP at 937, 964-65, 978-79, 3000.

¶18 The Banks received Schein's notice of withdrawal the next day.[8] But the Banks did not directly respond to Balsam's request. Instead, on May 12, 2005, they filed a motion to enforce the settlement agreement.

¶19 Kwiatkowski responded that the Banks' motion to enforce was premature and that, under the terms of the settlement agreement, the Banks had brought the action to enforce the settlement agreement in the wrong forum. He also asserted that even if the motion to enforce the settlement agreement was not premature and was filed in the proper forum, he was entitled to rely exclusively on the materials in the guardianship court files when moving for summary judgment and when negotiating the settlement agreement because, due to their continuing "special relationship" as guardians of his estate, the Banks were required to file these documents in the guardianship and/or disclose them during the settlement negotiations. Based on this premise, he argued that the settlement agreement was not enforceable because: (1) of fraud in the inducement to contract and/or innocent, negligent, or reckless misrepresentation; (2) the Banks had breached their fiduciary duties by failing to disclose all relevant documents when they acted as limited guardians of Kwiatkowski's estate; (3) the Banks had breached the implied duty of good faith and fair dealing present in all contracts by failing to disclose all relevant documents before the creation of the contract; and (4) the Banks had unclean hands.

¶20 The Banks replied, inter alia, that (1) under paragraph five of the settlement agreement, Kwiatkowski accepted the risk that there was other evidence supporting his underlying claims; (2) the information that Kwiat-

---

[7] The record suggests that Schein was not aware of the documents that Balsam found until she shared them with him on April 21, 2005.

[8] Thereafter, on May 9, 2005, Holt also filed a notice of withdrawal and substitution of counsel effective May 11, 2005.

kowski's attorney found was not "new" evidence; and (3) there was no evidence of fraud in the inducement.

¶21 In early June 2005, the trial court granted Kwiatkowski's requests: (1) to continue the hearing on the Banks' motion to enforce and (2) to conduct additional discovery to determine whether the Banks had failed to disclose facts that would render the settlement agreement unenforceable. On September 15, 2005, after conducting this additional discovery, Kwiatkowski filed statements of "irregularities" with numerous attachments pertaining to each bank, alleging that: (1) he had discovered additional documents demonstrating that the Banks failed to properly execute their duties as guardians and/or limited guardians of his estate and failed to file numerous documents potentially relevant to their performance as guardians and/or limited guardians; (2) excessive fees were paid to the "special administrators"; and (3) the Banks failed to "monitor" his business. These documents all related to matters that occurred during Kwiatkowski's period of incompetence. None of these documents was directly relevant to the settlement agreement negotiations.

¶22 The Banks asserted that Kwiatkowski had failed to establish that the settlement agreement was not enforceable, arguing that: (1) nothing he presented in his statements of irregularities was unknown to his counsel or not present in the court files before negotiating the settlement agreement; (2) he was merely trying to reargue his summary judgment motions after failing to conduct an adequate discovery before summary judgment; (3) there was no special relationship or fiduciary duty between the Banks and Kwiatkowski when they negotiated the settlement agreement, and they were in fact in an adversarial relationship at that time; and (4) Kwiatkowski negotiated and signed the settlement agreement while competent and with the advice of counsel. In addition, the Banks argued that Kwiatkowski had failed to show fraud or misrepresentation in relation to the settlement agreement and that, in paragraph five of the agreement, he specifically assumed the

risk that he would discover additional information. Finally, the Banks requested attorney fees and costs for responding to the motion for continuance, the motions for additional discovery and discovery requests, and Kwiatkowski's statements of irregularities.

¶23 Kwiatkowski replied by reasserting his previous arguments and claiming that Donna Holt, the attorney who represented him during the summary judgment phase of the proceedings, had been unable to conduct full discovery during this time because the trial court had granted summary judgment to one or more parties before discovery was complete. But, as the trial court noted, although the record showed that Holt did not receive some records due to a dispute over who would pay for copying the documents, there was nothing in the record showing that she requested additional time for discovery or that she asserted discovery was incomplete during any of the summary judgment proceedings.

¶24 In an oral ruling, the trial court held that the settlement agreement was valid and enforceable. It noted that, when the parties negotiated the settlement agreement, Kwiatkowski was not incapacitated and was represented by counsel. The trial court also noted that Kwiatkowski had specifically waived his right to rely on information discovered after signing the agreement.

¶25 Kwiatkowski moved for reconsideration of the oral ruling under CR 59(a)(4) ("[n]ewly discovered evidence, material for the party making the application, which he could not with reasonable diligence have discovered and produced at the trial"), CR 59(a)(8) ("[e]rror in law occurring at the trial and objected to at the time by the party making the application"), and CR 59(a)(9) ("[t]hat substantial justice has not been done"). In effect, he reasserted his earlier arguments, claiming, once again, that he had reasonably relied exclusively on the guardianship court files. He also asserted that the Banks, or apparently their attorneys, had violated the Rules of Professional Conduct (RPC) by failing to file complete and accurate information

with the court. Kwiatkowski also requested an evidentiary hearing, apparently to evaluate whether the information he found during his additional discovery demonstrated that the Banks had withheld or misrepresented facts to the court during the guardianship proceedings. The Banks responded by reasserting their earlier arguments.

¶26 Although it arguably acknowledged that the settlement agreement was enforceable, the trial court stated that there appeared to be a factual dispute related to some of the alleged "irregularities" and granted Kwiatkowski's request for a "full blown evidentiary hearing." Report of Proceedings (Nov. 7, 2005) at 62. On March 20, 2006, the trial court heard argument on the "renewed" motion to enforce the settlement agreement. CP at 2460, 2463.

¶27 At this hearing, the Banks reasserted that Kwiatkowski had waived his right to rely on information discovered after he signed the settlement agreement and that Kwiatkowski had assumed the risk there was additional evidence of which he was unaware. The Banks also argued that his fraud claim had no merit because paragraph five stated that none of the parties had relied on any representations by the other parties. The Banks also argued that no evidentiary hearing was required because there were no disputed facts relating to the enforceability of the settlement agreement. Again, Kwiatkowski reasserted his earlier arguments, arguing that given the fiduciary relationship and the general duty of fair dealing, he reasonably relied on the guardianship court files. Finally, the trial court granted the Banks' motion to enforce the settlement agreement.

2. DISCUSSION

¶28 Kwiatkowski now argues that the trial court erred when it found that the settlement agreement was not unenforceable for the following reasons: (1) he reasonably relied on the guardianship court files because the Banks were *acting in a fiduciary capacity when they collected the*

undisclosed information and therefore had a duty to disclose this information to the guardianship court; (2) the Banks had a continuing fiduciary duty to him that required them to disclose the documents he later found during the settlement agreement negotiations; (3) the Banks breached their contractual duty of good faith and fair dealings when negotiating the settlement agreement by not affirmatively disclosing all of the information his counsel later discovered; (4) the Banks engaged in fraud or misrepresentation by not disclosing all of the information his counsel later discovered; (5) equitable estoppel precluded the Banks from enforcing the settlement agreement because enforcement would allow them to benefit from their failure to comply with their fiduciary duties; and (6) the Banks' attorneys violated RPC 3.3 and RPC 4.1. None of these arguments has merit. In addition, he argues that the trial court erred when it did not conduct a full evidentiary hearing to resolve material facts related to the enforceability and validity of the settlement agreement or his "defenses" to enforcement of the agreement. This argument also lacks merit.

¶29 We review a trial court's order enforcing a settlement agreement de novo if "the evidence before the trial court consisted entirely of affidavits and the proceeding is similar to a summary judgment proceeding." *Brinkerhoff v. Campbell*, 99 Wn. App. 692, 696, 994 P.2d 911 (2000); *see also Lavigne v. Green*, 106 Wn. App. 12, 16, 23 P.3d 515 (2001). But if there are disputed facts, a trial court may abuse its discretion if it enforces the settlement agreement without first holding an evidentiary hearing to resolve any disputed issues of fact. *Brinkerhoff*, 99 Wn. App. at 696.

¶30 Kwiatkowski's assertion that he *reasonably* relied solely on the guardianship court's file when negotiating the settlement agreement because the Banks had a fiduciary duty to file all material information with the guardianship court has no merit under these circumstances. When Kwiatkowski filed his 2004 damages claim, he placed the Banks' performance of their fiduciary duty, the very

duty he now asserts required the Banks to file the materials he later discovered, at issue, and created an adversarial relationship between him and the Banks. As a matter of law, Kwiatkowski cannot assert that he *reasonably* relied on the Banks' performance of their fiduciary duties when whether the Banks breached their fiduciary duties was the very issue being resolved in the adversarial relationship. *See Guarino v. Interactive Objects, Inc.,* 122 Wn. App. 95, 122, 86 P.3d 1175 (2004) (discussing and stating in dicta that it "do[es] not disagree" with conclusion in *Mergens v. Dreyfoos,* 166 F.3d 1114, 1118 (11th Cir.), *cert. denied,* 528 U.S. 820 (1999), which held that in the context of a contentious adversarial relationship, reliance on misrepresentations or omissions is unreasonable as a matter of law between the parties negotiating a settlement agreement), *review denied,* 153 Wn.2d 1024 (2005).

¶31 Similarly, Kwiatkowski's argument that the Banks had a continuing fiduciary duty when negotiating the settlement agreement is also clearly without merit. Kwiatkowski, who had regained full competency and was represented by attorneys when he filed his damages claim and negotiated the settlement agreement, created an adversarial relationship with the Banks when he sued the Banks for damages. In addition, the parties were clearly in an adversarial relationship when they were negotiating a settlement agreement that would relieve Kwiatkowski from having to pay significant costs and fees and that would benefit the Banks by precluding Kwiatkowski from appealing the orders in their favor. These negotiations simply did not take place in a context suggesting that the Banks were in any way still acting as guardians or any other type of fiduciary in respect to Kwiatkowski.

¶32 Nor does Kwiatkowski's assertion that the Banks breached the duty of good faith and fair dealing inherent in contracts have any merit. Every contract contains an implied duty of good faith and fair dealing, and this duty of good faith and fair dealing "obligates the parties to cooperate with each other so that each may obtain the full

benefit of *performance*"; but performance of the agreement is not at issue here. *Badgett v. Sec. State Bank,* 116 Wn.2d 563, 569, 807 P.2d 356 (1991) (emphasis added) (citing *Metro. Park Dist. of Tacoma v. Griffith,* 106 Wn.2d 425, 437, 723 P.2d 1093 (1986); *Lonsdale v. Chesterfield,* 99 Wn.2d 353, 357, 662 P.2d 385 (1983); *Miller v. Othello Packers, Inc.,* 67 Wn.2d 842, 844, 410 P.2d 33 (1966)).

■ ¶33 Furthermore, Kwiatkowski's reliance on *Liebergesell v. Evans,* 93 Wn.2d 881, 613 P.2d 1170 (1980), which he asserts demonstrates that the duty of good faith and fair dealing applies in contract negotiations where there is an existing fiduciary duty between the parties or where one of the parties has superior knowledge, does not alter this conclusion. In *Liebergesell,* the issue was whether one of the parties was estopped from asserting a usury defense and the contract negotiations at issue were the contract negotiations relevant to the issues on appeal. Here, in contrast, the negotiations at issue when the Banks moved to enforce the settlement agreement were distinct from the underlying substantive issues, and Kwiatkowski does not show that the Banks had an ongoing fiduciary duty to him during the settlement agreement negotiations.

■ ¶34 Kwiatkowski's fraud, misrepresentation, and equitable estoppel arguments also have no merit. To establish intentional, negligent, or innocent misrepresentation; fraud; or estoppel, Kwiatkowski must show that he *reasonably or justifiably* relied on the truth of the Banks' representations, if any. *Alejandre v. Bull,* 159 Wn.2d 674, 690, 153 P.3d 864 (2007) (citing *Williams v. Joslin,* 65 Wn.2d 696, 697, 399 P.2d 308 (1965)); *Sorenson v. Pyeatt,* 158 Wn.2d 523, 538-39, 146 P.3d 1172 (2006); *Van Dinter v. Orr,* 157 Wn.2d 329, 333, 138 P.3d 608 (2006) (citing *Lawyers Title Ins. Corp. v. Baik,* 147 Wn.2d 536, 545, 55 P.3d 619 (2002)); *W. Coast, Inc. v. Snohomish County,* 112 Wn. App. 200, 206, 48 P.3d 997 (2002). But Kwiatkowski specifically agreed in paragraph five of the settlement agreement that he *did not* rely on any representations by any other party when negotiating the settlement agreement. Furthermore,

as discussed above, any such reliance would have been unreasonable.

¶35 As to his assertion that the Banks' attorneys violated the RPCs by failing to file required documents, the RPCs do not purport to set the standard for civil liability. *Hizey v. Carpenter,* 119 Wn.2d 251, 258, 830 P.2d 646 (1992).

¶36 In summary, paragraph five of the settlement agreement specifically precluded Kwiatkowski from relying on newly disclosed or discovered information, and he presents nothing establishing that this clause of the agreement was invalid. Nor does he present any evidence establishing that the settlement agreement was otherwise invalid or unenforceable. Accordingly, Kwiatkowski does not show that the trial court erred when it found that the settlement agreement was valid and enforceable. Thus, according to the terms of the agreement, Kwiatkowski cannot challenge the summary judgments dismissing his claims against the Banks and we need not address the issues he raises in relation to those orders.

¶37 Finally, Kwiatkowski fails to show that there were any disputed facts, beyond those he claims were based on the new or newly discovered evidence, that related to the enforceability of the settlement agreement. Given there was no relevant factual dispute, the trial court did not abuse its discretion by enforcing the settlement agreement without first holding an evidentiary hearing. *Brinkerhoff,* 99 Wn. App. at 696.

B. Denial of Motion to Set Aside Orders Discharging Banks

¶38 Kwiatkowski also challenges the trial court's order denying his motion to set aside the guardianship court's December 26, 1989; September 16, 1991; February 18, 1994; and April 25, 1997 orders discharging the Banks and his request for a full accounting. The settlement agreement precludes Kwiatkowski from raising this issue.

¶39 On May 21, 2004, Kwiatkowski moved to set aside the orders discharging the Banks and for a full accounting,

asserting that the December 26, 1989; September 16, 1991; February 18, 1994; and April 25, 1997 orders were void due to a lack of notice and a failure to follow a variety of statutory procedures. On June 14, 2004, the trial court denied Kwiatkowski's motions to set aside the orders relating to the Banks.

¶40 The settlement agreement purported to apply to "all claims asserted in, or that could have been asserted in, the matter of *Joseph Kwiatkowski v. Ralph Drews, et al.,* Thurston County Superior Court Cause No. 04-2[-]00124-0 ('Litigation')." CP at 941. It also provided:

> 3. In further consideration of the promises of the parties set forth herein, each party hereto fully and completely releases and waives any and all claims it may have against any other party hereto, . . . (other than Defendants Drews and Frost) . . . relating to or arising from the facts and circumstances alleged in the complaint filed in the Litigation and the role of any of the Defendant Banks in the Estate of Jana Kwiatkowski and the Estate of Joseph Kwiatkowski ("Released Claims").

> 4. With the exception of the July 7, 2004 Order referred to in paragraph 1 above,[9] *all court orders relating to the Defendant Banks entered in this Litigation or in the underlying guardianship/estate proceedings of Jana Kwiatkowski and Joseph Kwiatkowski shall remain in full force and effect including, but not limited to, those orders appointing the Defendant Banks limited guardians and those orders discharging them from this role in the Joseph Kwiatkowski proceedings.*

CP at 941-42 (emphasis added).

¶41 Paragraph four of the settlement agreement clearly states that *all* orders relating to the Banks "in the underlying guardianship/estate proceedings" will remain in full force and effect. CP at 942. Thus, under the terms of the agreement, Kwiatkowski cannot challenge the prior orders discharging the Banks.

[9] This order granted U.S. Bank's motion to reconsider the oral ruling denying its motion for attorney fees and costs, awarding the Banks legal attorney fees and costs "in amounts to be determined in a subsequent hearing." CP at 786.

¶42 In summary, Kwiatkowski did not present any evidence establishing that paragraph five was not valid or that the settlement agreement, as a whole, was not otherwise enforceable. Accordingly, the trial court properly enforced the settlement agreement, and we need not address Kwiatkowski's challenges to the Banks' summary judgment orders.

## II. Issues Related to Drews and Frost

¶43 Kwiatkowski also challenges: (1) the trial court's orders granting Drews and Frost summary judgment and (2) the trial court's order denying his motion to set aside the August 15, 1997 order discharging Drews and Frost as "special administrators" and for a full accounting.[10] He argues that the trial court erred when it found that his claims were barred by the guardianship statutes of limitations, asserting that there were no valid orders discharging Drews and Frost in their capacity as "special administrators" or Drews in his later capacity as limited guardian of the estate.

## A. Standard of Review

¶44 On an appeal from summary judgment, we engage in the same inquiry as the trial court. *Hisle v. Todd Pac. Shipyards Corp.*, 151 Wn.2d 853, 860-61, 93 P.3d 108 (2004) (citing *Kruse v. Hemp*, 121 Wn.2d 715, 722, 853 P.2d 1373 (1993)). The standard of review is de novo.

¶45 Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter

---

[10] Although Kwiatkowski arguably presented claims not related to the various defendants' roles as guardians, limited guardians, or "special administrators," such as a claim against Drews for breach of duty in his capacity as a member of the GAHC board of directors, he does not argue that summary judgment was improper on any claims unrelated to their guardianship duties.

of law." CR 56(c). We construe all facts and reasonable inferences therefrom in the light most favorable to the nonmoving party. *Vallandigham v. Clover Park Sch. Dist. No. 400,* 154 Wn.2d 16, 26, 109 P.3d 805 (2005) (citing *Atherton Condo. Apartment-Owners Ass'n Bd. of Dirs. v. Blume Dev. Co.,* 115 Wn.2d 506, 516, 799 P.2d 250 (1990)). But "bare assertions that a genuine material [factual] issue exists will not defeat a summary judgment motion in the absence of actual evidence." *Trimble v. Wash. State Univ.,* 140 Wn.2d 88, 93, 993 P.2d 259 (2000). And we may sustain the trial court on any correct ground, even though that ground was not considered by the trial court. *Nast v. Michels,* 107 Wn.2d 300, 308, 730 P.2d 54 (1986); *see also State v. Costich,* 152 Wn.2d 463, 477, 98 P.3d 795 (2004).

B. "SPECIAL ADMINISTRATORS" VS. LIMITED GUARDIANS

¶46 As a preliminary matter, Kwiatkowski argues that Drews and Frost were not actually appointed as "special administrators" but were, instead, acting as limited guardians of his business assets and, therefore, subject to the guardianship statutes. Although this characterization of their roles may be correct,[11] it is irrelevant here.

---

[11] Despite the guardianship court's use of the phrase "special administrator," it appears that Drews and Frost were not acting in that capacity. A "special administrator" is defined as a "personal representative of the estate of a decedent appointed for limited purposes and the term may be used in lieu of 'personal representative' wherever required by context." RCW 11.02.005(13). Chapter 11.32 RCW addresses special administrators. It provides that courts may appoint special administrators:

> When, by reason of an action concerning the proof of a will, or from any other cause, there shall be a delay in granting letters testamentary or of administration, the judge may, in his discretion, appoint a special administrator (other than one of the parties) to collect and preserve the effects of the deceased; and in case of an appeal from the decree appointing such special administrator, he shall, nevertheless, proceed in the execution of his trust until he shall be otherwise ordered by the appellate court.

RCW 11.32.010.

RCW 11.32.030 defines a special administrator's powers and duties and clearly indicates that a special administrator's appointment is temporary and ceases when the court appoints a personal representative in the matter:

¶47 RCW 11.96A.070(2) provides that any action for breach of fiduciary duty against a "personal representative," *which includes those acting as "special administrators," guardians, or limited guardians,* RCW 11.02.005(1), must be brought before the court discharges the personal representative.[12] Thus, whether Drews and Frost were acting as "special administrators" or limited guardians of Kwiatkowski's business assets, RCW 11.96A.070(2) applies.

### C. RCW 11.96A.070(2), RCW 11.92.050, AND RCW 11.92.053

¶48 As noted above, RCW 11.96A.070(2) (addressing statutes of limitations) provides that any action for breach of fiduciary duty against a "personal representative," which includes those acting as "special administrators," guardians, or limited guardians, RCW 11.02.005(1), must be brought *before the court discharges the personal representative.*

■ ¶49 Additionally, RCW 11.92.050(1), which applies to intermediate orders approving accounts, provides:

Such special administrator shall collect all the goods, chattels, money, effects, and debts of the deceased, and preserve the same for the personal representative who shall thereafter be appointed; and for that purpose may commence and maintain suits as an administrator, and may also sell such perishable and other goods as the court shall order sold, and make family allowances under the order of the court. The appointment may be for a specified time, to perform duties respecting specific property, or to perform particular acts, as stated in the order of appointment.

But RCW 11.32.040 further provides that "[u]pon granting letters testamentary or of administration the power of the special administrator shall cease."

Thus, to the extent Drews and Frost were not still acting under the power of attorney that they had when the Kwiatkowskis left for their New Zealand vacation, they were clearly not acting merely as "special administrators" but, rather, as limited guardians of Kwiatkowski's business assets.

[12] Although RCW 11.96A.070(1)(a), which addresses the statute of limitations for bringing a breach of fiduciary duty against a trustee of an express trust, considers when the possible breach of fiduciary duty was discovered or should have reasonably been discovered, there are no similar discovery provisions in RCW 11.96A.070(2). Thus, to the extent Kwiatkowski is arguing that the discovery doctrine precludes application of RCW 11.96A.070(2), that argument has no merit.

Upon the filing of any *intermediate* guardianship or limited guardianship account required by statute, or of any intermediate account required by court rule or order, the guardian or limited guardian may petition the court for an order settling his or her account with regard to any receipts, expenditures, and investments made and acts done by the guardian or limited guardian to the date of the interim report. Upon such petition being filed, the court may in its discretion, where the size or condition of the estate warrants it, set a date for the hearing of the petition and require the service of the petition and a notice of the hearing as provided in RCW 11.88.040 as now or hereafter amended; and, in the event a hearing is ordered, the court may also appoint a guardian ad litem, whose duty it shall be to investigate the report of the guardian or limited guardian of the estate and to advise the court thereon at the hearing, in writing. At the hearing on the report of the guardian or limited guardian, if the court is satisfied that the actions of the guardian or limited guardian have been proper, and that the guardian or limited guardian has in all respects discharged his or her trust with relation to the receipts, expenditures, investments, and acts, then, in such event, the court shall enter an order approving such account. *If the court has appointed a guardian ad litem, the order shall be final and binding upon the incapacitated person, subject only to the right of appeal as upon a final order;* provided that at the time of final account of said guardian or limited guardian or within one year after the incapacitated person attains his or her majority any such interim account may be challenged by the incapacitated person on the ground of fraud.

(Emphasis added.)

¶50 And RCW 11.92.053 provides:

Within ninety days after the *termination* of a guardianship for any reason, the guardian or limited guardian of the estate shall petition the court for an order settling his or her account as filed in accordance with RCW 11.92.040(2) with regard to any receipts, expenditures, and investments made and acts done by the guardian to the date of the termination. Upon the filing of the petition, the court shall set a date for the hearing of the petition after notice has been given in accordance with RCW 11.88.040. Any person interested may file objections to the

petition or may appear at the time and place fixed for the hearing thereof and present his or her objections thereto. The court may take such testimony as it deems proper or necessary to determine whether an order settling the account should be issued and the transactions of the guardian be approved, and the court may appoint a guardian ad litem to review the report.

At the hearing on the petition of the guardian or limited guardian, if the court is satisfied that the actions of the guardian or limited guardian have been proper, and that the guardian has in all respects discharged his or her trust with relation to the receipts, expenditures, investments, and acts, then, in such event, the court shall enter an order approving the account, and *the order shall be final and binding upon the incapacitated person, subject only to the right of appeal as upon a final order.* However, within one year after the incompetent attains his or her majority any such account may be challenged by the incapacitated person on the ground of fraud.

(Emphasis added.)

¶51 These statutes limit a ward's ability to pursue litigation related to the administration of his estate once the guardianship court has discharged the guardian, limited guardian, or other "personal representative," or approved intermediate accountings. We hold that these statutes apply; Kwiatkowski clearly brought his 2004 breach of fiduciary duty claims against Drews and Frost as "special administrators" well outside these limits and, given the discharge of liability in the August 15, 1997 discharge order, his other claims against the "special administrators" are also barred. Thus, the real issue here is whether the August 15, 1997 discharge order is valid.

## D. August 15, 1997 Discharge Order

¶52 The August 15, 1997 order approving the final report of the "special administrators" final report contained the following discharge statement:

IT IS HEREBY ORDERED that the Final Report of Special Administrators has been accepted by the Court and is approved

in all respects and that James M. Frost and Ralph H. Drews *are hereby discharged* from the office of Special Administrator and *from any and all liability in connection with their duties as Special Administrators.*

CP at 394 (emphasis added). Thus, if the August 15, 1997 discharge order is valid and final, Kwiatkowski cannot pursue his claims against Drews and Frost as special administrators.

¶53 Kwiatkowski initially contends that Drews and Frost cannot assert that the August 15, 1997 order discharging them as "special administrators" relieved them of any liability in connection with their fiduciary duties to him as "special administrators" because "[f]ailure to fully account in a manner as other fiduciary administrators or to obtain court approval for their fees renders the orders they received null and void." Br. of Appellant at 20. He further argues that: (1) the guardianship court gave Drews and Frost authority in excess of that authorized by RCW 11.32.030, which defines the powers and duties of a special administrator; (2) Drews and Frost were actually "de facto guardians," Br. of Appellant at 21; (3) Drews and Frost's accountings failed to comply with RCW 11.32.060[13] and RCW 11.92.040;[14] and (4) Drews and Frost failed to disclose financial data related to their fees to the guardianship court and/or the GAL. He also asserts that Drews and Frost "fail[ed] to fulfill their duties as fiduciaries," Br. of Appellant at 5, and failed to disclose material facts related to GAHC to Kwiatkowski, the guardianship court, and the GAL. These arguments all address Kwiatkowski's substantive claims; but they do not relate to whether the August 15, 1997 discharge order was valid, and we do not address them.

---

[13] RCW 11.32.060 provides: "The special administrator shall also render an account, under oath, of his proceedings, in like manner as other administrators are required to do."

[14] RCW 11.92.040 sets out the various duties of guardians and limited guardians of an estate, including a variety of reporting and accounting requirements.

¶54 Kwiatkowski also contends, however, that: (1) the August 15, 1997 discharge order was void because Drews and Frost failed to give the required notice apparently referring to the notice requirements of RCW 11-.88.040, (2) the order entered on their final accounting was void because they were ex parte orders, and (3) the order was invalid because the GAL waived his presence.

¶55 The notice provisions of RCW 11.88.040, which arguably apply to the discharge of guardians through RCW 11.92.050 or RCW 11.92.053, provides in part:

Before appointing a guardian or a limited guardian, notice of a hearing, to be held not less than ten days after service thereof, shall be served personally upon the alleged incapacitated person, if over fourteen years of age, and served upon the guardian ad litem.

Before appointing a guardian or a limited guardian, notice of a hearing, to be held not less than ten days after service thereof, shall be given by registered or certified mail to the last known address requesting a return receipt signed by the addressee or an agent appointed by the addressee, or by personal service in the manner provided for services of summons, to the following:

(1) The alleged incapacitated person, or minor . . . ;

. . . .

(3) Any other person who has been appointed as guardian or limited guardian, or the person with whom the alleged incapacitated person resides. *No notice need be given to those persons named in subsection*[ ] *. . . (3) of this section if they . . . have waived notice of the hearing.*

(4) . . . .

The alleged incapacitated person shall be present in court at the final hearing on the petition: PROVIDED, That this requirement may be waived at the discretion of the court for good cause other than mere inconvenience shown in the report to be provided by the guardian ad litem pursuant to RCW 11.88.090 as now or hereafter amended, or if no guardian ad litem is required to be appointed pursuant to RCW 11.88.090, as now or hereafter amended, at the discretion of the court for good cause

shown by a party. Alternatively, the court may remove itself to the place of residence of the alleged incapacitated person and conduct the final hearing in the presence of the alleged incapacitated person. Final hearings on the petition may be held in closed court without admittance of any person other than those necessary to the action or proceeding.

If presence of the alleged incapacitated person is waived and the court does not remove itself to the place of residence of such person, the guardian ad litem shall appear in person at the final hearing on the petition.

¶56 But Drews and Frost's August 15, 1997 final report as "special administrators" *was in response to Holts's July 29, 1997 motion to show cause,* requesting that the guardianship court restore most of Kwiatkowski's rights to manage his estate, which Holt supported with affidavits from Kwiatkowski and Drews. Kwiatkowski, Holt, and Drews, who was then one of the "special administrators," clearly had *actual notice* of this proceeding.

¶57 Although Kwiatkowski's GAL was not present at the August 15, 1997 hearing, there is nothing in the record on appeal affirmatively showing that the GAL did not receive notice of this proceeding, other than Kwiatkowski's bare assertion that he did not, which is not sufficient to overcome summary judgment. Furthermore, under RCW 11.88.040, notice to the GAL is not required if the GAL waived notice of the hearing, which the GAL waived when he signed the order approving the final report of the "special administrators," "Approved as to form; notice of presentation waived." CP at 394. Kwiatkowski does not show how any notice in relation to the discharge of the "special administrators" or the order approving their final report was inadequate. Accordingly, Kwiatkowski does not show that the trial court erred when it denied his motion to set aside the August 15, 1997 order and for an accounting.

¶58 Kwiatkowski also appears to argue that the statutes of limitations did not bar his claims because the guardianship court never approved Drews's final accounting in his capacity as limited guardian of the estate, in other words,

the final report required in the guardianship. Although we discuss below that this argument may have some merit in relation to the claims against Drews in his capacity as limited guardian of the estate, RCW 11.96A.070(2) still precludes Kwiatkowski from bringing a breach of fiduciary duty claim against the "special administrators" because he failed to do so before the court discharged the "special administrators."

¶59 Additionally, because the guardianship court appointed a GAL, the order approving the "special administrators" final report and August 15, 1997 discharge order were final and binding on Kwiatkowski, subject only to the right of appeal as on a final order and therefore not subject to any type of collateral attack. RCW 11.92.050(1) and the discharge clause clearly preclude any claims against them related to their performance of their duties as special administrators. Accordingly, the trial court properly granted summary judgment to Drews and Frost on the claims against them as "special administrators."

### III. Drews As Limited Guardian of the Estate

¶60 Kwiatkowski also contends that the January 26, 2001 order terminating Drews as limited guardian of his estate was not a "discharge" and that the guardianship court never actually discharged Drews as limited guardian of the estate because there was no order approving a final accounting and/or Drews did not comply with the conditions of the discharge.

¶61 A guardianship may terminate without a court order "[b]y an adjudication of capacity or an adjudication of termination of incapacity." RCW 11.88.140(1)(b). A guardianship also may terminate by court order "after such notice as the court may require if the guardianship or limited guardianship is no longer necessary." RCW 11.88.140(3). Within 30 days of the date of termination by court order, unless the court orders a different deadline, the guardian/limited guardian must prepare and file a "final verified

account of administration." RCW 11.88.140(3). The termination, other than by death of the incapacitated person, terminates the guardian or limited guardian's powers except that he may make disbursements for claims allowed by the court, for liability already properly incurred, and for administration expenses. RCW 11.88.140(4).

¶62 As noted above, RCW 11.92.053 provides:

Within ninety days after the termination of a guardianship for any reason, *the guardian or limited guardian of the estate shall petition the court for an order settling his or her account* as filed in accordance with RCW 11.92.040(2)[15] with regard to any receipts, expenditures, and investments made and acts done by the guardian to the date of the termination. Upon the filing of the petition, the court shall set a date for the hearing of the petition *after notice has been given in accordance with RCW 11.88.040.* Any person interested may file objections to the petition or may appear at the time and place fixed for the hearing thereof and present his or her objections thereto. The court may take such testimony as it deems proper or necessary to determine whether an order settling the account should be issued and the transactions of the guardian be approved, and the court may appoint a guardian ad litem to review the report.

At the hearing on the petition of the guardian or limited guardian, if the court is satisfied that the actions of the guardian or limited guardian have been proper, and that the guardian has in all respects discharged his or her trust with relation to the receipts, expenditures, investments, and acts, then, in such event, the court shall enter an order approving the account, and *the order shall be final and binding upon the incapacitated person, subject only to the right of appeal as upon a final order.* However, within one year after the incompetent attains his or her majority any such account may be challenged by the incapacitated person on the ground of fraud.

(Emphasis added.) But, as Kwiatkowski notes, it does not appear that the guardianship court filed an order approving Drews's final report as limited guardian of the estate and discharging him from his duties or from any liability

---

[15] RCW 11.92.040(2) lists the information the guardian's report must contain.

related to his performance of those duties. Thus, the trial court erred to the extent it found that the claims against Drews could not stand because the guardianship court had discharged any liability. Additionally, as to the breach of fiduciary duty claim, RCW 11.96A.070(2) also does not bar the action because there was no discharge. Furthermore, assuming the order terminating the guardianship was the earliest possible triggering event, traditional three-year statutes of limitations under RCW 11.96A.070 do not apply because Kwiatkowski filed the 2004 claim less than three years after the guardianship court filed that order. Accordingly, it appears that the trial court erred in granting summary judgment to Drews in his capacity as limited guardian of the estate on grounds related to any discharge or any statutes of limitations.[16]

¶63  Nevertheless, we affirm the summary judgment order dismissing the claims against Drews in his capacity as limited guardian of the estate on other grounds. The parties do not discuss, nor did the trial court appear to consider, that Drews's original authority over GAHC's activities as limited guardian of Kwiatkowski's estate was limited and, thus, any activity he engaged in relative to GAHC during that period clearly fell under his role as "special administrator" and the guardianship court subsequently discharged any liability related to Drews's performance in that capacity. Furthermore, when the guardianship court eventually discharged the "special administrators," it simultaneously changed the scope of Drews's duties as limited guardian *and* restored Kwiatkowski's capacity in relation to his ability to make decisions related to his business. These

---

[16] To the extent Kwiatkowski is also arguing that Drews was not discharged because the GAL did not receive proper notice of either the termination, Drews's final report as limited guardian of the estate, or Drews's discharge, that argument has no merit because as of August 15, 1997, the GAL was no longer Kwiatkowski's GAL. Kwiatkowski also appears to argue that the GAL's performance was inadequate and that this somehow prevented the statutes of limitations from applying to his claims against Frost and Drews, as "special administrators," and Drews, as limited guardian. How this argument relates to the statutes of limitations argument, the only argument that is arguably relevant on appeal, is confusing at best. Additionally, to the extent he is arguing that the GAL himself breached any duty, the GAL was not a party to the 2004 action.

facts preclude any claim against Drews in relation to GAHC when he was acting in his capacity as limited guardian of the estate because, in that capacity, he had no duties related to the operations of GAHC. Because there was no duty, we affirm summary judgment on the claims against Drews in his capacity as limited guardian of Kwiatkowski's estate on this alternative ground.

## IV. TOLLING

¶64 Kwiatkowski also appears to argue that any statutes of limitations were tolled because he was incapacitated. Citing RCW 11.96A.070(4), Drews and Frost argue that this assertion has no merit because Kwiatkowski was represented by a GAL. Drews and Frost are correct.

¶65 RCW 4.16.190 now provides:[17]

(1) Unless otherwise provided in this section, if a person entitled to bring an action mentioned in this chapter, except for a penalty or forfeiture, or against a sheriff or other officer, for an escape, be at the time the cause of action accrued either under the age of eighteen years, or incompetent or disabled to such a degree that he or she cannot understand the nature of the proceedings, such incompetency or disability as determined according to chapter 11.88 RCW, or imprisoned on a criminal charge prior to sentencing, the time of such disability shall not be a part of the time limited for the commencement of action.

(2) Subsection (1) of this section with respect to a person under the age of eighteen years does not apply to the time limited for the commencement of an action under RCW 4.16.350.

But RCW 11.96A.070(4) provides:

(4) The tolling provisions of RCW 4.16.190 apply to this chapter *except* that the running of a statute of limitations under subsection (1) or (2) of this section, or any other appli-

---

[17] In 2006, the legislature added subsection (2) and the proviso in subsection (1), neither of which applies here, to the statute. LAWS OF 2006. ch. 8, § 303.

cable statute of limitations for any matter that is the subject of dispute under this chapter, *is not tolled as to an individual who had a guardian ad litem, limited or general guardian of the estate,* or a special representative to represent the person during the probate or dispute resolution proceeding.

Kwiatkowski was represented by a GAL; thus RCW 11-.96A.070(4) clearly establishes that tolling does not apply. Furthermore, although the guardianship court removed the initial GAL on August 15, 1997, that court also found that Kwiatkowski had the capacity to manage most of his financial affairs and, to the extent he did not have capacity, Kwiatkowski was still represented by Drews, a limited guardian of the estate. Accordingly, Kwiatkowski cannot claim tolling.

## V. Motion To Amend and Add Parties

¶66 Kwiatkowski also challenges the trial court's denial of his motion to amend his complaint and add Davies as a party. This argument has no merit.

¶67 We review a trial court's denial of a motion to amend pleadings for abuse of discretion. *Del Guzzi Constr. Co. v. Global Nw. Ltd.,* 105 Wn.2d 878, 888, 719 P.2d 120 (1986). CR 15 provides that a party may amend his pleading by leave of the court and leave shall be freely given when justice so requires. *See Caruso v. Local Union No. 690 of Int'l Bhd. of Teamsters, Chauffers, Warehousemen & Helpers of Am.,* 100 Wn.2d 343, 349, 670 P.2d 240 (1983) (leave to amend should be freely given " 'except where prejudice to the opposing party would result' ") (quoting *United States v. Hougham,* 364 U.S. 310, 316, 81 S. Ct. 13, 5 L. Ed. 2d 8 (1960)). The trial court may consider such factors as delay, where delay causes unfair surprise. *Caruso,* 100 Wn.2d at 349.

¶68 In his motion to amend and add Davies and his law firm, filed nearly two years after the trial court dismissed the last defendants on summary judgment, Kwiatkowski asked to amend his complaint based on the additional

documents his counsel discovered that were apparently not in the guardianship court file. He contended that he was entitled to add these claims and parties under the "discovery doctrine," apparently referring to either the "discovery rule," which would arguably change the statutes of limitations related to Kwiatkowski's claims, or asserting a claim of newly discovered evidence. CP at 2150.

¶69 Regardless of which "doctrine" or "rule" he is asserting, and assuming either applies here, both the discovery rule and a claim of newly discovered evidence would require Kwiatkowski to show that he could not have obtained this information if he had exercised due diligence. *See C.J.C. v. Corp. of the Catholic Bishop,* 138 Wn.2d 699, 749, 985 P.2d 262 (1999) (discovery rule, which can toll the statutes of limitations, applies only when the "plaintiff lacked the means to ascertain that a wrong had been committed" and operates only if the plaintiff would not have known of the claim even if he or she had exercised due diligence); *Ino Ino, Inc. v City of Bellevue,* 132 Wn.2d 103, 140-41, 937 P.2d 154, 943 P.2d 1358 (1997) ("Newly discovered evidence must be that which the moving party 'could not with reasonable diligence have discovered and produced at the trial.' CR 59(a)(4)."), *cert. denied,* 522 U.S. 1077 (1998); *Alpine Indus., Inc. v. Gohl,* 101 Wn.2d 252, 254-55, 676 P.2d 488 (1984) (to obtain a new trial based on newly discovered evidence under CR 59, the plaintiff must show that he or she could not have discovered the new evidence had he or she exercised due diligence). At most, however, Kwiatkowski asserted that he was entitled to rely on the guardianship file; he never contended, and the record does not show, that he would not have found this information much earlier had he exercised due diligence before the trial court considered the summary judgment motions. As discussed above, relying exclusively on the guardianship file was unreasonable once Kwiatkowski asserted that he had been damaged by the parties' failures to comply with their duties under the guardianship.

¶70 Kwiatkowski brought his motion to amend and add parties *after* the trial court had already granted summary

judgment as to all parties and dismissed the claims against them with prejudice. Additionally, he does not establish that his "new" legal arguments could not have been raised earlier had he exercised due diligence before the trial court considered the summary judgment motions. In effect, he is essentially trying to present additional evidence to support his claims, which he could well have discovered if he had conducted virtually any discovery before bringing his damages claim. Furthermore, as to the Banks, any additional claims arising from the same set of facts is barred by the settlement agreement.

## VI. ATTORNEY FEES AND COSTS BELOW

### A. THE BANKS

¶71 To the extent Kwiatkowski is challenging the trial court's 2004 award of attorney fees and costs to the Banks related to their summary judgment motions or Kwiatkowski's motions to set aside the guardianship court's orders related to the Banks, the settlement agreement provides that the stipulated order dismissing the claims against the Banks with prejudice is "without fees and costs to any party." CP at 942; *see also* CP at 948.[18] Because we affirm the order granting the Banks' motion to enforce the settlement agreement, we need not examine any arguments related to these 2004 attorney fees and costs.

¶72 As to the attorney fees and costs related to the Banks' motion to *enforce* the settlement agreement, Kwiatkowski appears to contend that it was inequitable to award the Banks fees because the "newly discovered evidence" demonstrated that the Banks breached their fiduciary duties by failing to properly report or disclose evidence to the guardianship court. Br. of Appellant at 93. But Kwiat-

---

[18] The proposed stipulated order provided that the claims be dismissed "with prejudice and without an award of costs or fees to any undersigned party." CP at 948.

kowski fails to note that the court below granted the Banks' motion to enforce the settlement agreement and that the additional discovery Kwiatkowski conducted related solely to the alleged breaches of fiduciary duty and *not* to whether the settlement agreement itself was valid and enforceable. Given that the settlement agreement specifically precluded Kwiatkowski from relying on evidence or information he discovered after he signed the settlement agreement, and that this is exactly what Kwiatkowski was trying to do, the trial court did not err when it awarded attorney fees and costs related to the Banks' motions to enforce the settlement agreement and related to Kwiatkowski's additional discovery.

¶73 Regardless, the settlement agreement itself provides for fees and costs to the prevailing party in any action to enforce the settlement agreement. Although this provision also contains a forum selection clause requiring the parties to bring actions to enforce the settlement agreement in King County, Kwiatkowski does not argue on appeal that the Banks' decision to file its enforcement action in Thurston County rather than King County makes the settlement agreement unenforceable or prevents the Banks from receiving fees and costs under the terms of the agreement.

¶74 Kwiatkowski also attempts to challenge the reasonableness of the fee rates that the trial court applied when calculating BOA's and U.S. Bank's fees, asserting that these fees were not "commensurate with what is charged in the legal community for either Pierce or Thurston Counties." Br. of Appellant at 95. Rather than brief this issue, however, his counsel inserts the following footnote: "Due to the page limitation, appellant refers the court to the following clerk's papers for briefing on this issue," citing to CP at 2202-24, 2364-70. Br. of Appellant at 95. In effect, Kwiatkowski's counsel is moving to incorporate over two dozen pages of briefing into her already *100-page* brief. But our courts have consistently rejected attempts by litigants to incorporate by reference arguments

contained in trial court briefs, holding that such arguments are waived. *See US W. Commc'ns, Inc. v. Utils. & Transp. Comm'n,* 134 Wn.2d 74, 111-12, 949 P.2d 1337 (1997); *State v. Kalaskosky,* 121 Wn.2d 525, 540 n.18, 852 P.2d 1064 (1993).[19] Thus, we do not consider the additional briefing and, because Kwiatkowski submits no additional argument, authority, or citation to the record related to this issue, we refuse to address this issue.

¶75 Kwiatkowski also appears to argue that the fees were excessive because the Banks' own failures made the work necessary. Specifically, he argues that "[h]ad the Banks followed statutory procedure as clearly outlined in the guardianship statute, it would not have been necessary to expend the time to defend their actions as guardians." Br. of Appellant at 95. This argument appears to relate solely to the summary judgment issues; accordingly, as discussed above, we do not reach this issue.

## B. Drews and Frost

¶76 Although Kwiatkowski briefly mentions Drews and Frost in his attorney fees and cost section, nothing in the record on appeal shows that the court below awarded attorney fees and costs to Drews and Frost. Furthermore, even if it did make such an award, Kwiatkowski's one brief mention of Drews and Frost in his attorney fees and cost section is not sufficient to justify our review of that award.

## VII. Fees and Costs on Appeal

¶77 All of the parties request attorney fees and costs on appeal under RAP 18.1 and former RCW 11.96A.150 (2006).

---

[19] *See also Guerrero v. Tarrant County Mortician Servs. Co.,* 977 S.W.2d 829, 832-33 (Tex. Ct. App. 1998) (Addressing a similar attempt to incorporate prior briefing and refusing to consider arguments not presented in the appellate brief, the court stated, "Were we to approve of this tactic, appellate briefs would be reduced to a simple appellate record reference to a party's trial court arguments. Additionally, this would be an open door for parties to circumvent the appellate brief page limitations.").

The Banks also request fees and costs under the terms of the settlement agreement.

¶78 The Banks are clearly entitled to fees and costs under the settlement agreement. Drews and Frost are entitled to fees and costs under former RCW 11.96A.150.

¶79 Former RCW 11.96A.150 provides:

(1) Either the superior court or the court on appeal may, in its discretion, order costs, including reasonable attorneys' fees, to be awarded to any party: (a) From any party to the proceedings; (b) from the assets of the estate or trust involved in the proceedings; or (c) from any nonprobate asset that is the subject of the proceedings. The court may order the costs to be paid in such amount and in such manner as the court determines to be equitable.

(2) *This section applies to all proceedings governed by this title, including but not limited to proceedings involving trusts, decedent's estates and properties, and guardianship matters.* This section shall not be construed as being limited by any other specific statutory provision providing for the payment of costs, including RCW 11.68.070 and 11.24.050, unless such statute specifically provides otherwise. This statute [section] shall apply to matters involving guardians and guardians ad litem and shall not be limited or controlled by the provisions of RCW 11.88.090(9).

(Emphasis added.)

¶80 The parties do not dispute that former RCW 11.96A.150 applies. Because the case involves the defendants' actions while subject to Title 11 RCW, this case is a "proceeding[ ] involving trusts, decedent's estates and properties, and guardianship matters."

¶81 The Banks, Drews, and Frost are entitled to reasonable attorney fees and costs upon compliance with RAP 18.1.

¶82 Affirmed.

QUINN-BRINTNALL and PENOYAR, JJ., concur.

Review denied at 164 Wn.2d 1005 (2008).